## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DOROTHY A. SMULLEY,
     *Plaintiff*,

    v.

SAFECO INSURANCE COMPANY
OF ILLINOIS *et al*.,
     *Defendants*.

No. 3:20-cv-01888 (JAM)

## ORDER DISMISSING COMPLAINT FOR LACK OF FEDERAL JURISDICTION

This case is about an old car worth less than $8,000. After the plaintiff crashed the car on an icy road, she wanted her insurance company to pay to repair it rather than to declare it "totaled" and pay the replacement value. But because the company did not agree with the plaintiff, she has filed this *pro se* federal lawsuit against the insurance company as well as another company that furnishes valuation data to the insurance company. The plaintiff seeks declaratory relief against both companies as well as damages against the data-providing company under the Connecticut Unfair Trade Practices Act.

As an initial matter, I will deny the plaintiff's motion to recuse. I also conclude that the complaint must be dismissed for lack of federal jurisdiction. The complaint does not allege a cause of action that arises under federal law for purposes of federal question jurisdiction. Nor does the complaint allege facts suggesting a reasonable probability that the amount in controversy exceeds $75,000 for purposes of federal diversity jurisdiction. Accordingly, I will dismiss the complaint without prejudice.

## BACKGROUND

In late November 2018, plaintiff Dorothy A. Smulley was driving her car—a 2010 Chrysler Sebring Limited—when she had a car accident on an icy road in western Pennsylvania.[1] Her car skidded and hit a metal median resulting in damage to a fender, headlight, and bumper.[2] No other cars were involved in the accident, and neither Smulley nor her spouse who was in the car with her were injured.[3] Despite the accident, the car continued to be fully operable, and Smulley drove the car more than 300 miles back to her home in Connecticut.[4]

Smulley timely reported the accident to her car insurance company, defendant Safeco Insurance Company of Illinois ("Safeco").[5] Her policy limited Safeco's liability to pay the lower of either the actual cash value of the car or the amount necessary to repair or replace it.[6]

On December 5, 2018, a Safeco employee named Juan Carlos Maldonado completed an appraisal of the car.[7] When Safeco performs valuations for purposes of car insurance claims, it uses certain software programs developed by defendant CCC Information Services Inc. aka CCC Intelligent Solutions Holdings Inc. ("CCC").[8] CCC is in the business of collecting automobile-related information through software programs and then processing the data to sell to insurance companies like Safeco.[9]

Using one of CCC's software programs, Maldonado determined the car's pre-loss value to be $7,840.[10] He also completed a repair estimate using another CCC software program that

---

[1] Doc. #41 at 4 (¶ 15), 6 (¶ 18).
[2] *Id*. at 6 (¶ 18).
[3] *Ibid*.
[4] *Ibid*. (¶ 19).
[5] *Id*. at 7 (¶ 20).
[6] *Id*. at 4 (¶¶ 15-16).
[7] *Id*. at 8 (¶ 27).
[8] *Id*. at 3 (¶ 12), 13 (¶ 43), 16 (¶ 55).
[9] *Id*. at 13 (¶ 42).
[10] *Id*. at 8 (¶ 27).

estimated repairs would cost $4,873.75.[11] Because the pre-loss value of the car exceeded the estimated repairs, he recommended repair of the car.[12]

The car was towed by Safeco from Smulley's home in Connecticut to Traynor Collision Center ("Traynor").[13] But, according to Smulley, Maldonado had a contentious relationship with Traynor manager Ben Dituri.[14] Maldonado told Zachary Allyn, his supervisor at Safeco, about this conflict after completing his first estimate.[15] Maldonado and Allyn decided not to repair the car, and Allyn instructed Maldonado to disassemble it so that it would not operate or function.[16]

On December 11, 2018, after disassembling the car, Maldonado completed a second repair estimate using CCC's software that increased the repair cost to $5,795.73, and he now reclassified the car as a total loss.[17] Allyn told Smulley that he would reclassify and repair the car if it were moved to Breezy Point Auto Body Inc. ("Breezy"), a different Safeco repair facility.[18]

On December 13, 2018, Smulley's car was towed from Traynor to Breezy, and Breezy paid Traynor $1,471.36 in storage fees.[19] Allyn had Breezy employee Paul Kristopik disassemble the car again, and he had him include the towing expenses in the repair estimate as "other charges."[20]

On December 14, 2018, Kristopik produced a third repair estimate of $7,991.27, and he classified the car as a total loss.[21] Allyn left Smulley a message that day stating that the car was a

---

[11] *Ibid.*
[12] *Ibid.*
[13] *Ibid.*
[14] *Ibid.*
[15] *Ibid.*
[16] *Id.* at 8-9 (¶ 27).
[17] *Id.* at 9 (¶ 27).
[18] *Ibid.* (¶ 28).
[19] *Ibid.* (¶ 29).
[20] *Ibid.*
[21] *Id.* at 10 (¶ 29).

total loss that would not be repaired, and he then refused any further communication with her.[22]

In January 2019, Smulley sued Safeco, Traynor, and Breezy in Connecticut state court, alleging that Safeco was negligent and breached Smulley's insurance contract.[23] In February 2020, a state court judge granted Safeco's motion to compel binding appraisal or arbitration as to the amount of the loss of Smulley's car, and to stay the litigation pending the appraisal process.[24]

Smulley filed several motions for reconsideration and appeals, as well as two motions to remove the state court judge, all of which were denied or dismissed.[25] Smulley's car has remained at Breezy during the pendency of the state court litigation, which has required Smulley to purchase another car and to incur debt through a car loan and additional insurance payments.[26]

In December 2020, Smulley filed this federal lawsuit against Safeco and CCC. The amended complaint alleges three counts. Count One seeks a declaratory judgment against Safeco that "declares the original estimate and appraisal dated December 5, 2018 operative under the standard provisions of [Smulley's] basic personal automobile insurance policy in the state of Connecticut."[27] Count Two seeks a declaratory judgment that CCC has a duty to comply with three statutory provisions of Connecticut state law: Conn. Gen. Stat. §§ 14-65f, 38a-353, and 38a-355.[28] Count Three seeks a declaratory judgment that CCC's practices violate the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110g, and seeks costs, fees, and punitive damages.[29]

---

[22] *Ibid.* (¶ 30).
[23] *Id.* at 1-2 (¶¶ 2-4). For the public docket in the underlying state court case, *see Smulley v. Safeco Ins. Co. of Illinois, et al.*, FBT-CV19-6082597-S, available at http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FBTCV196082597S [https://perma.cc/ZY52-JHKR] (last accessed August 3, 2021).
[24] *See id.* Doc. #147.15.
[25] *See id.* Docs. #180.10; #183.10; #185.00; #187.00; #190.00; #198.50 #209.20; *see also* Doc. #44 at 7-8.
[26] Doc. #41 at 20 (¶¶ 75-76).
[27] *Id.* at 12 (¶ 38).
[28] *Id.* at 13-14, 18, 21 (¶¶ 45-47, 60).
[29] *Id.* at 18-21.

The defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Smulley has opposed both motions and cross-moved for summary judgment in her favor. Smulley has also filed a motion for recusal pursuant to 28 U.S.C. § 144.[30]

<strong>DISCUSSION</strong>

I will first address Smulley's motion for recusal before addressing additional issues.

### A. *Recusal*

I held oral argument on the pending motions to dismiss on May 26, 2021. In light of the ongoing pandemic, the argument was noticed to proceed by the Zoom video/audio platform, and an entry on the docket stated: "All parties and members of the public may use the Zoom access information to observe the proceeding by video or by audio."[31]

Each of the parties and counsel identified themselves for the record at the outset of the hearing.[32] Smulley appeared *pro se* by telephone rather than by video.[33] Local counsel for CCC—attorney Christopher Williams of the law firm of Conway Stoughton LLC—noted his presence, and the transcript reflects the following exchange involving a disclosure by the court reporter that her spouse works at the same law firm:

> MR. WILLIAMS: Good afternoon, Your Honor.
> Christopher Williams from Conway Stoughton on behalf of CCC.
>
> THE COURT: Great, great. It looks like we've got everybody. Sorry about the late start, we had a sentencing go a little bit late today.
> If you'd like to proceed, who would like to start today?
>
> THE COURT REPORTER: Your Honor, I don't want to interrupt, but with the appearances mentioned, my husband

---

[30] Doc. #74.
[31] Doc. #54.
[32] Doc. #75 at 3-4.
[33] *Id*. at 3.

5

works at Conway Stoughton. I just wanted to disclose
that.

THE COURT: All right. Thank you.
And that was -- just to make sure Ms. Smulley
heard that, that was from our court reporter in the case.

MS. SMULLEY: Yes, Your Honor. Thank you.

THE COURT: All right.[34]

I then heard argument on the pending motions from Smulley as well as from counsel for

the defendants. There was no objection by Smulley or any reference during the remainder of the

hearing to the employment of the court reporter's spouse at one of the law firms for one of the

parties in the case.

Following the hearing I verified with the court reporter that her husband (who is an

attorney) had no involvement with this case, and then I asked my law clerk to research whether

the employment status of a court reporter's spouse as an attorney at a law firm that is appearing

as counsel in a case constitutes grounds for a judge to recuse under 28 U.S.C. § 455.

The answer was no, and so I entered the following order on July 6, 2021 (approximately

six weeks after the hearing) stating that I had considered the issue and concluded that there was

no basis for recusal:

> MEMORANDUM RE COURT REPORTER. During the course of oral argument
> on the motions for summary judgment on May 26, 2021, the court reporter
> disclosed that her spouse is an attorney at one of the law firms involved in this
> case (Conway Stoughton LLC). The Court has verified that the court reporter's
> spouse has no involvement with this case. Because the court reporter serves a
> ministerial function of recording the proceedings and has no involvement with the
> Court's substantive decision-making in this case or any case, the Court concludes
> under 28 U.S.C. § 455(a) that there is no basis for recusal. *See, e.g., In re Horne*,
> 630 Fed. App'x 908, 911-12 (11th Cir. 2015) (noting that "we are unable to locate
> any cases suggesting that a judge's administrative employee's relationship with a

---

[34] *Id*. at 4. Although Smulley disputes that attorney Williams appeared at oral argument or that the court reporter
made any disclosure at all, *see* Doc. #74-1 at 6 (¶¶ 23-24), this claim is refuted by the transcript and my independent
recollection of the oral argument.

witness is grounds for the judge's recusal" and that "[t]o the contrary, recusal is warranted on the basis of a judicial employee's relationships only when the employee has (or appears to have) a role in the substantive decision-making process"); *see also Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1312-13 (10th Cir. 2015). It is so ordered. Signed by Judge Jeffrey A. Meyer on 7/6/2021.[35]

My order triggered a series of filings by Smulley arguing that I should recuse. I denied Smulley's motion for reconsideration and denied a motion to stay the proceedings for purposes of an interlocutory appeal.[36] Beyond the reasons already stated, I further noted that Smulley's motion was untimely because she had failed to promptly move for recusal after being advised of the issue at oral argument, noting that "'a party must move for recusal at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for a claim.' *United States v. Amico*, 486 F.3d 764, 773 (2d Cir. 2007)." [37]

Most recently, Smulley has filed a motion for recusal with a supporting affidavit pursuant to 28 U.S.C. § 144.[38] That statute provides as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144.

Although this statute might be read to require a judge in the first instance to refer a recusal motion to another judge, case law makes clear that the statute vests authority with the judge whose recusal is sought to decide as an initial matter whether recusal is warranted. *See LoCascio v. United States,* 473 F.3d 493, 498 (2d Cir. 2007); *Chambers v.*

---

[35] Doc. #68.
[36] Docs. #70, #73.
[37] Doc. #70.
[38] Doc. #74.

*U.S. Dep't of Veteran's Affs.*, 2004 WL 1396424, at *2 (D. Conn. 2004) (collecting cases). To warrant recusal, an "affidavit must show a true personal bias, and must allege specific facts and not mere conclusions or generalities," and "the judge is presumed to be impartial and a substantial burden is imposed on the affiant to demonstrate that such is not the case." *Sharkey v. J.P. Morgan Chase & Co.*, 251 F. Supp. 3d 626, 630 (S.D.N.Y. 2017).[39] The analysis for whether I can be impartial in this action under 28 U.S.C. § 144 is the same as the analysis I have previously conducted under 28 U.S.C. § 455. *See Sibley v. Geraci*, --- Fed. App'x ----, 2021 WL 2224369, at *1 (2d Cir. 2021).

Smulley claims that "a financial conflict of interest was not timely disclosed by any of the financially interested parties," including the court reporter and CCC's counsel.[40] But the timeliness of any disclosure by counsel or the court reporter does not have bearing on the issue of whether *the judge* can be impartial in this matter.[41] As the Second Circuit has explained, "[t]o be sufficient an affidavit [under 28 U.S.C. § 144] must show the objectionable inclination or disposition of the *judge*; it must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Wolfson v. Palmieri*, 396 F.2d 121, 124 (2d Cir. 1968) (*per curiam*) (emphasis added).

Smulley has not carried her burden to show that I am biased against her or that the circumstances give rise to an appearance of bias. Multiple courts have ruled that a judge is not required to recuse because a court staff member has an affiliation through a family member to a party or counsel in a case provided that the staff member does not take part

---

[39] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[40] Doc. #74 at 1, 4-5.
[41] *See* Doc. #70.

in or appear to take part in the judge's substantive decision-making in a case. *See, e.g.*, *In re Horne*, 630 Fed. App'x 908, 910-11 (11th Cir. 2015) (recusal not required by the fact that a judge's courtroom deputy was the sister of a paralegal for defendant's counsel and despite fact that the paralegal offered affidavit testimony at trial to contradict testimony of plaintiff; "recusal is warranted on the basis of a judicial employee's relationships only when the employee has (or appears to have) a role in the substantive decision-making process") (citing cases); *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1312-13 (10th Cir. 2015) (recusal not required by the fact that the husband of the judge's law clerk worked for the defendant's insurance company to monitor the trial because the husband did not work for the party defendant and because the law clerk performed only ministerial functions at trial without a role in the judge's substantive decision-making). Accordingly, because Smulley's affidavit does not provide legally sufficient grounds for recusal, I will deny Smulley's motion for recusal pursuant to 28 U.S.C. § 144.

### B.  *Subject matter jurisdiction*

The defendants move to dismiss in part for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain a federal court's subject matter jurisdiction. *See, e.g.*, *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016).

If a plaintiff is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). Still, however, even a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Meadows v. United Services,*

*Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

It is a very basic principle of law that federal courts have limited subject matter jurisdiction. *See generally Gunn v. Minton*, 568 U.S. 251, 256 (2013). In general, federal courts have so-called "federal question" jurisdiction over any claims that arise under federal law. *See* 28 U.S.C. § 1331. Federal courts also have so-called "diversity" jurisdiction over claims that arise under state law if the parties are citizens of different States and if the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. I will consider in turn whether Smulley has carried her burden to establish either federal question jurisdiction or diversity jurisdiction.

### 1. *Federal question jurisdiction*

The first two counts of the complaint seek relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. But because the Declaratory Judgment Act expressly conditions its application on there being an actual controversy that is already within a federal court's jurisdiction, it is well established that a complaint's invocation of the Declaratory Judgment Act is not enough by itself to sustain federal question jurisdiction. *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006); *Albradco, Inc. v. Bevona*, 982 F.2d 82, 85 (2d Cir. 1992). Therefore, the fact that the complaint cites and relies on the federal Declaratory Judgment Act does not suffice to establish federal question jurisdiction.

The complaint also cites as a basis for jurisdiction a provision of the federal Motor Vehicle Safety Act, 49 U.S.C § 32308.[42] That statutory provision allows for civil penalties when a person "(1) fail[s] to provide the Secretary of Transportation with information requested by the Secretary in carrying out this chapter; or (2) fail[s] to comply with applicable regulations prescribed by the Secretary in carrying out this chapter." 49 U.S.C § 32308(a)-(b). It also

---

[42] Doc. #41 at 3 (¶ 11); Doc. #51-1 at 12-13.

provides that "[t]he Attorney General may bring a civil action in a United States district court to enjoin a violation" of those same provisions. 49 U.S.C § 32308(d)(1).

"Whether federal courts have federal question jurisdiction over an action is typically governed by the well-pleaded complaint rule, pursuant to which federal question jurisdiction exists only if plaintiff's statement of his own cause of action shows that it is based on federal law." *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (citing *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009)).[43] Although the complaint cites the Motor Vehicle Safety Act in passing as a basis for federal jurisdiction, it does not allege how any of the defendants violated the Motor Vehicle Safety Act or any federal cause of action that arises under the Motor Vehicle Safety Act. Nor could it plausibly allege a cause of action under the cited provision of the Motor Vehicle Safety Act because this provision does not provide for any private right of action to enforce its terms.

In a similar vein, Smulley asserts that there is federal jurisdiction under the U.S. Constitution. Her briefing invokes the Commerce Clause because "both Safeco and CCC rely upon interstate commerce of mail and wire communications to accomplish the business goals established."[44] And she also contends that "[t]he result of Safeco's actions constitutes a taking of plaintiff's property without just compensation, a violation of the Fifth and Fourteenth Amendment of the United States Constitution."[45]

But the complaint makes no mention of these federal constitutional provisions. Moreover,

---

[43] The well-pleaded complaint rule is subject to certain exceptions not applicable here. *See, e.g.*, *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) (*per curiam*) (exception for complaints alleging state law causes of action that are with the subject matter scope of certain federal statutes that completely preempt state law); *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 113 (2d Cir. 2004) (exception for complaints alleging state law cause of action that necessarily depends on resolution of a substantial question of federal law).
[44] Doc. #51-1 at 14-16.
[45] *Id*. at 24.

both the defendants are private companies, and Smulley could not plausibly allege that they are "state actors" for purposes of any claim that they violated her rights under the U.S. Constitution. *See, e.g.*, *Fabrikant v. French*, 691 F.3d 193, 206-07 (2d Cir. 2012) (discussing the "state action" requirement for constitutional claims).

 All in all, Smulley has not alleged a cause of action that arises under federal law or that is otherwise sufficient to establish federal question jurisdiction. Accordingly, she has not carried her burden to establish a basis for federal question jurisdiction.

### 2. *Diversity jurisdiction*

Smulley further argues that there is federal diversity jurisdiction. Although there is no dispute that Smulley is a citizen of a different State than the two defendants, a party who seeks to invoke federal diversity jurisdiction under 28 U.S.C. § 1332 bears the burden of proving a reasonable probability that the amount in controversy exceeds $75,000. *See Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017). A court should presume that the face of the complaint is a good faith representation of the amount in controversy, but a defendant may overcome this presumption by demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums. *Ibid.*

The record here establishes to a legal certainty that the amount in controversy is not more than $75,000. As to the first two counts that seek relief under the Declaratory Judgment Act, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Correspondent Services Corp.*, 442 F.3d at 769. "[T]he amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the

injury being averted constitutes the amount in controversy when damages are not requested." *Ibid*.

For the purpose of a declaratory judgment action over insurance coverage, it is the value of the underlying insurance claim that determines the amount in controversy, not the face value of the policy. *See Merrimack Mut. Fire Ins. Co. v. Hodge*, 2021 WL 796272, at *3 (D. Conn. 2021); *Amica Mut. Ins. Co. v. Levine*, 7 F. Supp. 3d 182, 187 (D. Conn. 2014). The underlying insurance claim in this action is for the value of repairing or replacing Smulley's car. The complaint alleges that the car was worth less than $8,000—far below the $75,000 threshold.[46]

For Smulley's declaratory judgment claim against Safeco, the complaint alleges that Smulley "is entitled to a declaratory judgment which declares the original estimate and appraisal dated December 5, 2018 operative under the standard provisions of plaintiff's basic personal automobile insurance policy in the state of Connecticut."[47] For Smulley's declaratory judgment claim against CCC, the complaint alleges that Smulley "is entitled to a declaratory judgment which declares CCC's obligations as practiced and described herein under CCC ONE Estimating platform, ValueScope and any other software related module which interfaces or exists in the application of basic personal automobile physical damage in the state of Connecticut."[48] Neither of these claims for declaratory relief can be plausibly interpreted to involve an amount in controversy of more than $75,000.

Smulley's third cause of action invokes the Connecticut Unfair Trade Practices Act against CCC, and for this claim she seeks an award of costs, fees, and punitive damages.[49] She claims to have been substantially harmed by the loss of her use of the car and having to buy

---

[46] *See* Doc. #41 at 8 (¶ 27); Doc. #51-1 at 14.
[47] Doc. #41 at 12 (¶ 38).
[48] *Id.* at 18 (¶ 60).
[49] *Id.* at 18, 21 (¶ (3)).

another car and to insure both cars.[50] But considering that her car is worth less than $8,000, these alleged collateral expenses do not plausibly add up to more than $75,000 in damages.

Nor does Smulley's prayer for punitive damages under CUTPA make up for the amount-in-controversy shortfall. For purposes of assessing whether an action meets the amount-in-controversy requirement, the Second Circuit has made clear that a claim for punitive damages must be given "closer scrutiny" than a claim for actual damages. *Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l - New York Branch, Inc.*, 821 F. App'x 32, 35 (2d Cir. 2020).

CUTPA allows a court in its discretion to award punitive damages if there is evidence that reveals "a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Gargano v. Heyman*, 203 Conn. 616, 622 (1987); *see also Hernandez v. Apple Auto Wholesalers of Waterbury LLC*, 460 F. Supp. 3d 164, 190 (D. Conn. 2020) (same). Here, however, the complaint alleges only that CCC was "negligent" in its "duty to comply" with various technical statutory obligations that CCC allegedly "failed to consider."[51] Allegations of mere negligence fall well short of recklessness or intentional and wanton conduct; indeed, "[m]ere negligence cannot support a CUTPA claim." *Bentley v. Greensky Trade Credit, LLC*, 156 F. Supp. 3d 274, 289 (D. Conn. 2015); *see also O'Reilly v. BJ's Wholesale Club, Inc.*, 2018 WL 1336128, at *5 (D. Conn. 2018) (same).

Therefore, even assuming that the complaint plausibly alleges a CUTPA claim at all (which CCC strongly disputes), there is no legal basis for a punitive damages award under CUTPA based on CCC's alleged acts of negligence. Because the allegations of wrongdoing in the complaint preclude an award of punitive damages, the possibility of an award of punitive

---

[50] *Id*. at 20 (¶¶ 72, 75).
[51] *Id*. at 19 (¶ 66).

damages may not be considered for purposes of satisfying the jurisdictional amount-in-controversy requirement. *See Bindrum v. Am. Home Assur. Co. Inc.*, 441 F. App'x 780, 782 (2d Cir. 2011) (punitive damages not considered for purposes of jurisdictional amount in controversy where complaint failed to plausibly allege culpability prerequisites for an award of punitive damages).

All in all, Smulley has not alleged facts to suggest a reasonable probability that the amount in controversy is more than $75,000. All three of her claims involve amounts far below the jurisdictional threshold. Smulley has not carried her burden to show a basis for federal diversity jurisdiction.

CONCLUSION

For the reasons set forth above, the Court DENIES the motion to recuse (Doc. #74), and the Court GRANTS defendants' motions to dismiss (Docs. #43, #46) to the extent that they seek dismissal for lack of federal jurisdiction. In light of the Court's ruling that it lacks jurisdiction, there are no grounds to address the defendants' additional arguments for dismissal, and the Court DENIES as moot Smulley's cross-motions for summary judgment (Docs. #50, #51) in the absence of federal jurisdiction.

The Clerk of Court shall close this case. The Court's order of dismissal is without prejudice, and Smulley may file a motion to re-open and an amended complaint by **September 1, 2021** if she has good faith grounds to file an amended complaint with allegations that are sufficient to redress the concerns stated in this ruling.

It is so ordered.

Dated at New Haven this 3rd day of August 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge